UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTER DIVISION

| | |
|---|---|
| WILLIAM PERRIN, ) | |
| ) | Case No. 4:15-cv-00850 (HEA) |
| Plaintiff, ) | |
| ) | **JURY TRIAL DEMANDED** |
| v. ) | |
| ) | |
| RUBINBROWN LLP and ) | |
| JOHN F. HERBER, JR., ) | |
| ) | |
| Defendants. ) | |

## FIRST AMENDED COMPLAINT

Comes now Plaintiff William Perrin, by and through his attorneys, and for his First Amended Complaint states:

### Preliminary Statement

1. Defendant RubinBrown LLC ("RubinBrown") violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, by taking adverse employment action against Plaintiff based on his consumer report without providing him a copy of that consumer report and without proving him a written description of the rights of consumers under the FCRA. 15 U.S.C. § 1681b(b)(3)(A).

2. Pursuant to its own written policies, documents, and admissions in this litigation, RubinBrown routinely obtains consumer reports and uses information from those reports to conduct background checks on its applicants and employees.

1

3. While the use of consumer reports for employment purposes is not *per se* unlawful, it is subject to mandatory disclosure and authorization requirements under the FCRA. 15 U.S.C. §§ 1681(b)(2)(A)(i) & (ii).

4. RubinBrown has violated the rights of Plaintiff and all other similarly situated applicants and employees by obtaining their consumer reports without proper authorization because RubinBrown's standard authorization forms fail to comply with the FCRA's strict requirement that a disclosure and authorization be contained in a separate "stand alone" document. *Id.*

5. In Count I, Plaintiff asserts an FCRA claim under 15 U.S.C. § 1681(b)(3)(A) alleging that RubinBrown took adverse employment action against him based, in whole or in part, on information contained in his consumer report and RubinBrown failed to provide him a copy of that consumer report and a written description of the rights of a consumer under the FCRA.

6. In Count II, Plaintiff asserts a class action claim under 15 U.S.C. §§1681b(b)(2)(A)(i) & (ii) and Fed. R. Civ. P. 23 on behalf of himself and all other applicants and employees of RubinBrown who executed RubinBrown's standard authorization forms and were the subject of a consumer report obtained by RubinBrown on or after the date two years proceeding filing this claim.

## The Parties

7. Plaintiff is an adult citizen of the City of St. Louis, Missouri who at relevant times was employed by RubinBrown as a Help Desk Technology Support Specialist.

8. Defendant RubinBrown is a Missouri limited liability partnership that, during times relevant, operated a public accounting and financial services business headquartered at One North Brentwood, Clayton, Missouri 63105 in St. Louis County, Missouri.

9. Defendant John F. Herber, Jr. is a *sui juris* individual residing in St. Louis County, Missouri who serves as the general partner of RubinBrown, and therefore Mr. Herber is liable for the debts and obligations of RubinBrown pursuant to R.S. Mo. 359.251.2.

## Jurisdiction & Venue

10. The FCRA authorizes court actions by private parties to recover damages for violation of the FCRA's requirements. 15 U.S.C. §§ 1681n & 1681p. Jurisdiction is also based on 28 U.S.C. § 1331.

11. Venue in this district is proper under 28 U.S.C. § 1391(b) and (c) because Plaintiff resides in this district, RubinBrown maintains its principal place of business in this district, and a substantial part of the events giving rise to the claims occurred in this district.

**Facts Relevant to Claim for Unlawful Adverse Employment Action**

12. On or about November 5, 2013, Plaintiff applied for employment with RubinBrown.

13. Around that time, RubinBrown informed Plaintiff that he was hired but he would have six months to sufficiently improve his credit score.

14. RubinBrown did not at any time present Plaintiff with any copy of his consumer report.

15. RubinBrown did not at any time present Plaintiff with any description in writing of the rights of a consumer under the FCRA.

16. Plaintiff was employed by RubinBrown at its Clayton, Missouri headquarters from on or about December 2, 2013 to on or about May 2, 2014 as a Help Desk Technology Support Specialist.

17. On or about May 2, 2014, RubinBrown terminated Plaintiff's employment, informing him that the reason for his termination was his failure to sufficiently improve his credit score.

**Facts Relevant to Claim for Unlawful Procurement and Use of Consumer Reports**

18. 15 U.S.C. § 1681b(b)(2)(A)(i)-(ii) requires a stand-alone disclosure; the only extraneous information permitted within the same document is an authorization by the consumer to the employer to obtain a consumer report.

19. As the Federal Trade Commission ("FTC") explained in an opinion letter, Congress specified a "standalone disclosure [ ] so that consumers will not be distracted by additional information at the time the disclosure is given." FTC Division of Credit Practices FCRA Staff Opinion Letter from Cynthia S. Lamb, Investigator, to Richard L. Steer, Hirsch Connors & Bull, P.C. (Oct. 21, 1997), 1997 WL 33791227 (F.T.C.).

20. In connection with his employment application, on or about November 5, 2013, Plaintiff completed RubinBrown's standard application forms, including among other things, a RubinBrown's standard form entitled "Application Signature Page."

21. RubinBrown's standard "Application Signature Page" contains a disclosure that "I agree to have references and credit investigations with the knowledge that this is to become part of my employee record" and "I understand that I may have additional background or credit investigations run during my employment with RubinBrown", along with various other extraneous notices, acknowledgements and explanations including, but not limited to, an explanation for the reasons for completing the employment application, a statement of non-discrimination on the basis of unlawful employment criteria, a request to disclose need for disability accommodation, verification of the truth of the application responses, a waiver of liability based on references by former employers, agreement to disclose "secondary employment," a release of educational transcripts, and an acknowledgement and explanation of "at will" employment.

22. At the same time, and in connection with his employment application, Plaintiff completed RubinBrown's standard application form entitled "Pre-Employment Investigation Disclosures and Authorization."

23. RubinBrown's standard "Pre-Employment Investigation Disclosures and Authorization" form contains a disclosure that consumer reports may be obtained and an authorization to obtain consumer reports, along with various other extraneous notices, acknowledgements and explanations including an expression of RubinBrown's appreciation for the applicant's interest in employment, an explanation that RubinBrown's "normal procedure for processing applications" includes "an investigation into [the applicant's] background," a notice that "[s]hould an investigative consumer report be requested, [the applicant] will have the right to demand a complete and accurate disclosure of the nature and scope of the investigation requested and a written summary of [the applicant's] rights under the Fair Credit Reporting Act," authorization for "RubinBrown LLP, its partners, personnel, and/or agents to conduct and interpret interview procedures they believe necessary," a notice that "[i]f hired, this authorization shall remain on file and shall serve as an ongoing authorization for RubinBrown LLP to procure consumer reports or investigative consumer reports at any time during [the applicant's] employment period," and a "release" of "RubinBrownLLP, its partners, personnel and agents from any liability and

6

responsibility, damages and claims of any kind whatsoever arising from this investigation of my background and the interview procedures conducted."

24. RubinBrown's sworn response to Plaintiff's Interrogatory No. 11 verifies its policy and practice to obtain consumer reports for all applicants provided an employment offer:

> …as of the time of Plaintiff's employment with RubinBrown, RubinBrown provided job applicants with written information pertaining to the background check conducted, and obtained their authorization prior to conduct a background check. The background check was only performed for job applicants to whom RubinBrown make the decision to offer employment, and only after the decision to offer employment was made. The background checks were performed by Research Associates, Inc., a consumer reporting agency.

25. RubinBrown's written policy entitled "Financial Integrity of Team Members" provides "[i]f circumstances warrant, periodic credit checks on team members may be run by Human Resources, Inc in confidence."

26. Pursuant to RubinBrown's written policies, form documents and admissions, during times relevant RubinBrown obtained the consumer reports of (a) Plaintiff and all other persons to whom RubinBrown decided to offer employment and (b) at least some of its employees including Plaintiff.

27. RubinBrown's conduct was willful considering (a) the language of the FCRA itself, (b) court decisions interpreting the FCRA, (c) FTC interpretations of the FCRA, (d) RubinBrown's status as a sophisticated professional services firm with available access to both inside and outside legal advice, and (e) RubinBrown's own written policies and

other documents which demonstrate its cognizance of the FCRA's applicability. In short, RubinBrown was aware of the FCRA, but failed to comply with its requirements.

## Class Action Allegations

28. Plaintiff's claim for unlawful procurement and use of consumer reports (Count II) is brought as a class action under Fed. R. Civ. P. 23, on behalf of himself and as the Class Representative of a Class defined as:

> All applicants and employees of RubinBrown who executed RubinBrown's standard authorization forms and were the subject of a consumer report obtained by RubinBrown on or after the date two years proceeding filing this claim.

29. Plaintiff's claim asserted in Count II satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of Fed. R. Civ. P. 23.

30. The Class satisfies the numerosity standard because it consists of at least 40 persons who are geographically dispersed and, therefore, joinder of all Class members in a single action is impracticable.

31. Questions of fact and law are common to the Class including, but not necessarily limited to, the two critical issues in this claim: (1) whether RubinBrown used unlawful authorization forms to obtain consumer reports and (2) whether such conduct was willful.

32. Plaintiff's claims are typical of those of the Class in that:

   a. Plaintiff and the Class executed the same standard forms authorizing RubinBrown to obtain their consumer reports,

8

    b. Using those same forms, RubinBrown obtained their consumer reports, and

    c. The same facts underlie the allegations of willfulness asserted on behalf of Plaintiff and the Class such as the language of the FCRA itself, court decisions interpreting the FCRA, FTC interpretations of the FCRA, RubinBrown's status as a sophisticated professional services firm with available access to both inside and outside legal advice, and the fact that RubinBrown's own written policies and other documents demonstrate its cognizance of the FCRA's applicability.

33. Plaintiff is an adequate representative of the Class because he is a member of the Class and his interests do not conflict with the interests of the members of the Class he seeks to represent. The interests of the members of the Class will be fairly and adequately protected by Plaintiff and the undersigned counsel, who have extensive experience prosecuting complex employment and class action litigation.

34. The common questions of fact and law identified above predominate over any questions affecting only individual persons as the two critical questions to all claims are (1) whether RubinBrown used unlawful standard authorization forms to obtain consumer reports and (2) whether such conduct was willful. The same evidence underlies all Class members' allegations of unlawful standard authorization forms and the same evidence underlies all Class members' allegations of willfulness.

35. A class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to other available methods for the fair and efficient adjudication of the state law claims. Moreover, maintenance of this action as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy as members of the Class have little interest in individually controlling the prosecution of separate class actions, no other litigation is pending over the same controversy, it is desirable to concentrate the litigation in this Court due to the relatively small recoveries per member of the Class, and there are no material difficulties impairing the management of a class action. Further, it would be impracticable and undesirable for each member of the Class who suffered harm to bring a separate action. In addition, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members.

### Count I: Adverse Employment Action in Violation of the FCRA

36. Plaintiff reasserts and re-alleges the allegations set forth above.

37. The FCRA requires that before taking an adverse action against an employee based in whole or in part on a consumer report, an employer must provide the employee a copy of that consumer report and a written description of the rights of a consumer under the FCRA. *See* 15 U.S.C. § 1681b(b)(3)(A).

38. RubinBrown's termination of Plaintiff's employment constitutes an "adverse action" under the FCRA. *See* 15 U.S.C. § 1681a(k)(1)(B)(ii).

39. At Plaintiff's termination meeting, RubinBrown informed Plaintiff that it was terminating his employment based on information in his consumer report, and RubinBrown did not inform Plaintiff of any other reason for his termination.

40. RubinBrown thereby used a "consumer report," as defined by the FCRA, to take adverse employment action against Plaintiff.

41. RubinBrown failed to provide Plaintiff a copy of his consumer report or a written description of the rights of a consumer under the FLSA either before, during or after terminating his employment.

42. RubinBrown violated the FCRA by terminating Plaintiff's employment, in whole or in part, based on his consumer report while failing to provide him with a copy of that consumer report and failing to provide him with a written description of the rights of a consumer under the FCRA. *See* 15 U.S.C. § 1681b(b)(3)(A).

43. The foregoing violations were willful as RubinBrown acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681b(b)(3)(A).

44. RubinBrown's conduct was willful as reflected by the language of the FCRA itself, court decisions interpreting the FCRA, FTC interpretations of the FCRA, RubinBrown's status as a sophisticated professional services firm with available access

to both inside and outside legal advice, and RubinBrown's own written policies and other documents showing its cognizance of applicability of the FCRA.

45. Plaintiff is entitled to actual damages sustained as a result of RubinBrown's FCRA violation, including lost compensation, lost benefits and emotional distress damages, *or* statutory damages of not less than $100.00 and not more than $1,000.00 for its violation. *See* 15 U.S.C. § 1681n(a)(1)(A).

46. Plaintiff is entitled to punitive damages for these violations. *See* 15 U.S.C. § 1681n(a)(2).

47. Plaintiff is entitled to recover his costs and attorneys' fees. *See* 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff prays this Court enter its order, judgment and decree:

a) Declaring that RubinBrown committed violations of the FCRA;

b) Declaring that RubinBrown acted willfully in deliberate or reckless disregard of Plaintiff's rights and its obligations under the FCRA;

c) Awarding appropriate equitable relief, including but not limited to an injunction forbidding RubinBrown from engaging in further unlawful conduct in violation of the FCRA;

d) Awarding actual *or* statutory damages against Defendants as provided by the FCRA;

e) Awarding punitive damages against Defendants as provided by the FCRA;

    f) Awarding reasonable attorneys' fees and costs against Defendants as provided by the FCRA; and

    g) Granting such other equitable and further relief as this Court deems just and proper.

### Count II: Unlawful Procurement and Use of Consumer Reports

48. Plaintiff reasserts and re-alleges the allegations set forth above.

49. The FCRA requires that disclosures of procurement of consumer reports for employment purposes and authorizations to obtain such consumer reports be contained in a separate "stand alone" document. *See* 15 U.S.C. §§ 1681b(b)(2)(A)(i) & (ii).

50. RubinBrown obtained the consumer reports of Plaintiff and the Class based on its standard "Application Signature Page" which contains various extraneous notices, acknowledgements and explanations including, but not limited to, an explanation for the reasons for completing the application, a statement of non-discrimination on the basis of unlawful employment criteria, a request to disclose the need for disability accommodation, verification of the truth of the application responses, a waiver of liability based on references by former employers, agreement to disclose "secondary employment," a release of educational transcripts, and an acknowledgement and explanation of "at will" employment.

51. RubinBrown obtained the consumer reports of Plaintiff and the Class based on its standard "Pre-Employment Investigation Disclosures and Authorization" form

13

which contains various extraneous notices, acknowledgements and explanations including an expression of RubinBrown's appreciation of the applicant's interest in employment, an explanation that RubinBrown's "normal procedure for processing applications" includes "an investigation into [the applicant's] background," a notice that "[s]hould an investigative consumer report be requested, [the applicant] will have the right to demand a complete and accurate disclosure of the nature and scope of the investigation requested and a written summary of [the applicant's] rights under the Fair Credit Reporting Act," authorization for "RubinBrown LLP, its partners, personnel, and/or agents to conduct and interpret interview procedures they believe necessary," a notice that "[i]f hired, this authorization shall remain on file and shall serve as an ongoing authorization for RubinBrown LLP to procure consumer reports or investigative consumer reports at any time during [the applicant's] employment period," and a "release" of "RubinBrownLLP, its partners, personnel and agents from any liability and responsibility, damages and claims of any kind whatsoever arising from this investigation of my background and the interview procedures conducted."

52. RubinBrown violated the FCRA by obtaining consumer reports of Plaintiff and the Class based on authorization forms which address several extraneous matters beyond a mere disclosure that a consumer report may be obtained and an authorization for the procurement of that consumer report. 15 U.S.C. §§ 1681b(b)(2)(A)(i) & (ii).

53. The foregoing violations were willful as RubinBrown knew that its authorization forms should not include or address matters not strictly required by the FCRA and / or that it was obtaining consumer reports based on authorizations addressing matters not strictly required by the FCRA, as reflected by:

    a. The clear language of the FCRA itself,

    b. Court decisions interpreting the FCRA,

    c. FTC interpretations of the FCRA,

    d. RubinBrown's status as a sophisticated professional services firm with available access to both inside and outside legal advice, and

    e. RubinBrown's own written policies and other documents showing its cognizance of applicability of the FCRA.

54. Because RubinBrown's conduct was willful, Plaintiff and the Class are entitled to statutory damages of not less than $100.00 and not more than $1,000.00 per each and every violation. 15 U.S.C. § 1681n(a)(1)(A).

55. Plaintiff and the Class are entitled to recover their costs of this action together with reasonable attorney's fees. 15 U.S.C. § 1681n(a)(3).

WHEREFORE, Plaintiff prays this Court enter its order, judgment and decree:

    a) Awarding appropriate equitable relief, including but not limited to an injunction forbidding RubinBrown from using its unlawful standard form authorization documents to obtain consumer reports;

b) Awarding statutory damages against Defendants as provided by the FCRA;

c) Awarding reasonable attorneys' fees and costs as provided by the FCRA; and

d) Granting other and further relief, in law or equity, as this Court may deem appropriate and just.

### Demand for Jury Trial

Plaintiff hereby requests a trial by jury of all issues triable by jury.

Respectfully submitted,

| | |
|---|---|
| __/s Mark Potashnick__ | |
| Mark Potashnick, MBE # 41315 | Eli Karsh, MBE # 43061 |
| **WEINHAUS & POTASHNICK** | **LIBERMAN, GOLDSTEIN & KARSH** |
| 11500 Olive Blvd., Suite 133 | 230 South Bemiston, Suite 1200 |
| St. Louis, Missouri 63141 | St. Louis, Missouri 63105 |
| Telephone: (314) 997-9150 | Telephone: (314) 862-3333 ext. 13 |
| Facsimile: (314) 997-9170 | Facsimile: (314) 862-0605 |
| markp@wp-attorneys.com | elikarsh@aol.com |

Attorneys for Plaintiff

### CERTIFICATE OF SERVICE

The foregoing was served on Defendant's attorneys of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.

__/s Mark Potashnick__