UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| WILLIAM PERRIN, ) | |
| ) | Case No. 4:15-cv-00850 (HEA) |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| RUBINBROWN LLP, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S UNOPPOSED COMBINED MOTION FOR FINAL
SETTLEMENT APPROVAL AND MEMORANDUM IN SUPPORT**

Named Plaintiff William Perrin, on behalf of himself and a class defined below, by and through his attorneys, respectfully moves the Court to issue an Order finally approving the parties' Class Action Settlement Agreement ("Settlement Agreement") as being fair, reasonable, adequate and in the best interests of class members, dismissing the claims with prejudice, and directing the parties to effectuate the settlement terms.  A true and correct copy of the Settlement Agreement is attached as "Exhibit 1."  The declaration of the settlement administrator is attached as "Exhibit 2."

**MEMORANDUM IN SUPPORT**

The parties have reached a settlement on behalf of Plaintiff and a 932-member Class defined as "all employees or prospective employees of Defendant in the United States who were the subject of a consumer report that was sought by Defendant and who executed RubinBrown's then-standard FCRA disclosure form on or after August 27, 2013 through [November 9, 2017],[1] but excluding any person who previously settled or released all of the claims covered by this settlement, or any person who previously was paid or received awards through civil or administrative actions for all of the claims

---

[1] The parties realized that their prior agreement to a class period running through the date of final approval made no sense.  Thus, they agreed to a class period through November 9, 2017, the date of preliminary settlement approval.

covered by this settlement, or any person who excludes himself/herself from the Class." The settlement meets the standards for preliminarily approving a class action settlement.

## Basic Facts and Procedural History

On May 28, 2015, Plaintiff filed a claim alleging termination in violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*  After Defendant's standard consumer-report authorization form and procedures were produced in discovery, Plaintiff amended his Complaint to add a class action claim alleging unlawful procurement of consumer reports in violation of the FCRA.  Basically, Plaintiff pled that Defendant obtained consumer reports of its employees and applicants without using a "stand-alone" disclosure and authorization form required under the FCRA.  15 U.S.C. § 1681(b)(2)(A).

Defendant filed various motions to dismiss the class claim, which were fully briefed, the last of which was still pending when the parties reached a settlement.  ECF Docs. 18, 30 & 77.  Therein, Defendant argued that Plaintiff and the class lack Article III standing to assert the unlawful procurement claim because they could not plead or prove an actual injury resulting from Defendant's conduct.  ECF Doc. 77.

The parties conducted thorough written discovery, including Defendant's voluminous disclosures, which permitted both sides to evaluate the claims and defenses and to calculate potential damage scenarios.

On February 27, 2017, the parties mediated for a full day with Dick Sher, a well-respected and experienced mediator, resulting in a settlement term sheet.

Over the year, the parties repeatedly attempted to agree on the language of the Settlement Agreement.  In November 2017, they were finally able to resolve such settlement language issues.

**Summary of the Proposed Settlement and Notice Results**

The parties executed the attached Settlement Agreement. Ex. 1. The critical terms of the Settlement Agreement are summarized below. In sum, Plaintiff agreed to fully settle all putative class members' claims for wrongful procurement of consumer reports in exchange for Defendant paying a maximum total of $130,000.00. *Id.*, ¶¶ I, III(A) & V(C). The maximum settlement amount includes statutory damages, a modest service award, attorneys' fees and litigation costs. *Id.*, § I, V(A) & V(D).

All Class Members who timely filed a claim will receive a share of the recovery.

The proportional payout to Class Members who timely submit a claim has been calculated after subtracting the following from the Settlement Fund: (i) Class Counsel's attorneys' fees of $43,333.33, (ii) Class Counsel's costs and expenses of $4,337.00, (iii) Plaintiff's incentive award of $2,500.00, and (iv) settlement administration costs of $8,357.00; all subject to the Court's approval. *Id.* The minimum payout is 80% of the amount allocated to the class after such deductions. *Id.*, ¶ 5(A).

The limited release encompasses claims "related to the procurement or use of any consumer reports in connection with any prospective, current, or former employment with Defendant, its affiliates, subsidiaries, successors and assigns, related parties, directors, employees, attorneys, and agents; including but not limited to all claims under the FCRA and all comparable federal, state, and local laws." *Id.*, ¶ III(B).

A Court-approved Notice of Settlement ("Notice") was mailed to all Class Members after preliminary approval of the class action settlement. The Notice explains in clear terms (1) the nature of the settlement, (2) the factors used to determine the claims payments, (3) the binding

3

nature of the release, (4) each Class Member's right to submit a claim, and (5) each Class Member's right to object to the settlement or opt-out.

Based on his initiative and service to the class, including working diligently with counsel to investigate, prosecute and resolve the claims, Named Plaintiff Perrin seeks a modest incentive award of $2,500.00.  *Id.*, ¶ V(A).

The settlement provides for Class Counsel to seek fees equal to one-third of the maximum settlement amount plus their out-of-pocket costs.  *Id.,* ¶¶ V(A) & 5(B).

Mr. Perrin also executed a settlement of his wrongful termination claim against Defendant (Count I).  The proceeds of that settlement are payable upon final approval of the class settlement.

After dissemination of the Court-approved notice to 932 class members, 290 Class members filed claims, only 6 class members opted-out of the settlement, and no Class member objected to the settlement.  Ex. 2, ¶¶ 10, 13 & 15.  Based on the actual claim rate, the per-claimant recovery is $182.13.

## Argument and Authorities

### I. General Policy Favoring Settlement

"The law strongly favors settlements. Courts should hospitably receive them [because] [a]s a practical matter, a remedy that everyone agrees to is a lot more likely to succeed than one to which the defendants must be dragged kicking and screaming." *Little Rock School Dist. v. Pulaski County Special School Dist. No. 1*, 921 F.2d 1371, 1383 (8th Cir. 1990).  This presumption is enhanced "[i]n the class action context" where there is an "overriding public interest in favor of settlement." *In re Charter Communications Securities Litigation*, 2005 WL 4045741, *4 (E.D. Mo. June 30, 2005) (quoting *Armstrong v. Board of Sch. Directors*, 616 F.2d 305, 313 (7th Cir. 1980)).  This settlement, in particular, should be readily approved.

**II. This Court Should Grant Approval of the Rule 23 Class Action Claims**

   **A.  The "*Van Horn* Factors" Support Settlement Under Rule 23.**

At the second step for approval of a class settlement, the inquiry focuses on whether the terms of the proposed settlement are "fair, reasonable, and adequate." See Fed. R. Civ. P. 23(e)(2).  In making that determination a district court should consider (1) "the merits of the plaintiff's case[] weighed against the terms of the settlement, (2) the defendant's financial condition, (3) the complexity and expense of further litigation, and (4) the amount of opposition to the settlement." *Marshall v. NFL,* 787 F.3d 502, 508 (8th Cir. 2015) (quoting *Van Horn v. Trickey,* 840 F.2d 604, 607 (8th Cir. 1988)).  Notably, within this Circuit, "[a] settlement agreement is 'presumptively valid.'"  *Id.* (quoting *In re Uponor,* 716 F.3d 1057, 1063 (8th Cir. 2013) (quoting *Little Rock Sch. Dist.*, 921 F.2d at 1391).  Here, all of the *"Van Horn* factors" support settlement approval.

      **1.  Weighed Against the Risks of Litigation, the Settlement Represents a Substantial Benefit to the Class.**

The benefits to the Class Members of compromise over continued litigation are uncontested here.  Plaintiff achieved a beneficial result for the FCRA Class, especially considering that the class claim was ultimately likely to fail based on post-filing decisions by this Court and others within this Circuit, which all find lack of Article III standing absent proof of any actual injury.

Publicly-available settlements of FCRA claims alleging procurement of consumer reports based on improper authorization forms resolved for far less than the relief provided to the Class.  If there was a 100% claim rate, then each Class Member would receive about $73.00.  However, a 100% claim rate is unrealistic in any class action.  As the proposed notice explains, a 50% claim rate will result in each claimant receiving about $146.00.  Based on the actual claim rate, the per-claimant recovery is $182.13.

The actual per-Claimant recovery well exceeds publicly-available per-plaintiff recoveries in comparable settlements of the same claim. *Compare, e.g., Kirchner v. Shred-It USA Inc.*, No. CIV. 2:14-1437 WBS, 2015 WL 1499115, at *10 (E.D. Cal. Mar. 31, 2015) (providing $45.55 per class member for an improper authorization form under the FCRA); *Barel v. Bank of Am.*, 255 F.R.D. 393, 402 (E.D. Pa. 2009) ("The proposed settlement confers $51.96 of value on each class member, which amounts to... 52% of the low end of the damages range and 5.2% of the high end of the damages range") (*quoting In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001), quoting, in turn, study by Professor John C. Coffee, Jr., Adolf A. Berle Professor of Law at Columbia University Law School, which determined that since 1995, class action settlements have typically recovered "between 5.5% and 6.2% of the class members' estimated losses"); *see also In re Toys R Us-Delaware, Inc.--Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453-54 (C.D. Cal. 2014) ("Viewed from the perspective of each class member, had the class member sued Toys individually and proved that it acted wil[l]fully, he or she could have recovered between $100 and $1,000 in statutory damages.... A $5 or $30 award, therefore, represents 5% to 30% of the recovery that might have been obtained. This is not a de minimis amount. Given the likelihood that plaintiffs would have been unable to prove an actual injury and the risk that they would have been unable to prove willfulness and recover any damages at all, the court finds that the amount of the settlement weighs in favor of approval.") (emphasis added); *La Valle v. Chexsystems*, No. 8:08cv01283, Doc. No. 58, Stipulation and Agreement of Settlement (C.D. Cal. Oct. 5, 2011) ("Settlement Class Members who submit a Valid Claim will be eligible to receive a one-time payment of $82.00 per [claim]") (emphasis added); *Phillips v. Accredited Home Lenders Holding Co.*, No. 2:06cv00057, Doc. No. 51, ¶ 4, Judgment

6

and Order of Dismissal (C.D. Cal. July 17, 2008) ("[t]he relief negotiated by the Parties includes a payment of $10.00") (emphasis added).

The result achieved for the Class is particularly favorable considering this Court's decision in *May v. Consumer Adjustment Co.,* which was issued in the month prior to the parties' mediation. 2017 U.S. Dist. LEXIS 7401 (E.D. Mo. Jan. 19, 2017) (Autrey, H).  This Court held that improper disclosures, without alleging actual harm, fail to confer Article III standing. *Id.*, at *7-9.  Here, Plaintiff alleged improper disclosures within a consumer report authorization, but he was unable to allege actual harm to himself or to any Class member.  Thus, pursuant to this Court's decision in *May,* it appeared likely to Plaintiff and Class Counsel that, absent a settlement, the class claim would be dismissed when the Court decided Defendant's then-pending motion to dismiss (ECF Doc. 77).

Notably, Class Counsel's prediction prior to mediation of an eventual finding of no standing appears to have been validated by later decisions following *May* by this District and other courts within this Circuit. *Martin v. Consumer Adjustment Co.,* 2017 U.S. Dist. LEXIS 210632, *6 (W.D. Mo. Dec. 22, 2017); *Wheeler v. Am. Profit Recovery, Inc.,* 2017 U.S. Dist. LEXIS 160887, *6-8 (E.D. Mo. Sept. 29, 2017); *St. Louis Heart Ctr., Inc. v. Nomax, Inc.,* 2017 U.S. Dist. LEXIS 39411, *7 (E.D. Mo. Mar. 20, 2017).

Considering these substantial risks, and the likely outcome of dismissal, Class Counsel achieved a beneficial result for the Class.

### 2. RubinBrown's Financial Condition

Although there is no suggestion that RubinBrown would have been unable to absorb an adverse judgment following trial, it was unlikely that Plaintiff and the Class would have prevailed at all, given the Court's decision in *May* and the subsequent decisions in *Martin, Wheeler* and *St. Louis*

7

*Heart Ctr.*  Thus, this factor is neutral.

### 3. Further Litigation Would Have Only "Hit a Wall"

The burden of further litigation would have been considerable.  *See, e.g., Marshall,* 787 F.3d at 512 ("Class actions, in general, 'place an enormous burden of costs and expense upon [] parties.'") (quoting *Schmidt v. Fuller Brush Co.,* 527 F.2d 532, 535 (8th Cir. 1975)).  But, such burden and expense would have most-likely been wasted.  Again, the inevitable result was a finding of no Article III standing.  *May, Martin, Wheeler, St. Louis Heart Ctr.*  By reaching a favorable settlement, Plaintiff avoided the need to litigate this case to an uncertain, but likely unsuccessful, end.

### 4. The Settlement Has Received No Opposition.

Despite direct-mail notice to 932 Class members, only 6 elected to exclude themselves from the settlement and no class member has objected to the settlement.  This clearly indicates a positive reaction by the Class.  Thus, the fourth factor also weighs heavily in favor of final approval.

In sum, because all of the "*Van Horn* factors" either support final approval or are neutral, the Court should grant such approval consistent with Rule 23.

### Conclusion

The settlement reached here, which provides meaningful recovery, satisfies the standard for final approval.  Moreover, the recovery clearly constitutes a fair and reasonable resolution of a dispute.  Thus, the Court should finally approve the parties' settlement of the Rule 23 class claim dismiss the claims with prejudice in accordance with the Settlement Agreement, and order dissemination of the settlement funds in accordance with the parties' agreement.

Respectfully submitted,

**WEINHAUS & POTASHNICK**

  */s Mark Potashnick*
Mark A. Potashnick (E.D. Mo. Bar # 41315MO)
11500 Olive Blvd., Suite 133
St. Louis, Missouri  63141
Telephone:(314) 997-9150
Facsimile: (314) 997-9170
Email:      markp@wp-attorneys.com
     and

Eli Karsh (E.D. Mo. Bar # 43061MO)
LIBERMAN, GOLDSTEIN & KARSH
230 S. Bemiston Ave., Suite 1200
St. Louis, MO 63105
Telephone:      (314) 862-3333, ext. 13
Facsimile: (314) 862-0605
Email:      elikarsh@aol.com

**Class Counsel**

**CERTIFICATE OF SERVICE**

   A true and correct copy of the foregoing was served on all counsel of record via the Court's electronic case filing system on the date reflected in the Court's electronic case filing records.

  */s Mark Potashnick*